IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LARODERICK WILSON, | § § § | |
| Plaintiff, | § § | |
| -v- | § § | Civil Action No. 3:15-cv-3573 |
| | § § | ECF |
| UPS GROUND FREIGHT, INC., | § § § | |
| Defendant. | § | |

PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE DISTRICT COURT JUDGE:

Plaintiff Laroderick Wilson files this Original Complaint because Defendant UPS Ground Freight, Inc. fired him because of his race and his opposition to race discrimination. Mr. Wilson experienced a number of discriminatory acts on the part of Defendant, including receiving less favorable routes than non-African-American employees and experiencing enhanced scrutiny by his supervisors. Defendant ultimately fired Mr. Wilson less than two months after he raised concerns of race discrimination in a charge of discrimination co-filed with the United States Equal Employment Opportunity Commission and the Texas Workforce Commission. The reason Defendant alleges for Mr. Wilson's termination is that he was "stealing time" from Defendant by failing to work the dock while his truck was being repaired at one of Defendant's terminals. The reason provided by Defendant for Mr. Wilson's termination is a pretext for discrimination and retaliation, as Mr. Wilson is aware of no other road driver that was required to work the dock while waiting for truck repairs, much less any road drivers who were terminated for this reason.

In support, Mr. Wilson respectfully shows the following:

## I.
## PARTIES

1. Plaintiff Laroderick Wilson is an individual who resides in Dallas County, Texas.

2. Defendant UPS Ground Freight, Inc. is a Virginia corporation with its principle place of business in Georgia. Defendant UPS Ground Freight, Inc. may be served with process by serving its attorneys, Shannon Schmoyer and Brooke Waldrep, Schmoyer Reinhard LLP, 17806 IH 10 West, Suite 400, San Antonio, Texas 78257.

## III.
## JURISDICTION AND VENUE

3. Personal jurisdiction is appropriate because at all times relevant to Mr. Wilson's claims, Defendant UPS Ground Freight, Inc. ("UPS" or "Defendant") was doing business in the State of Texas as defined by the Texas Long Arm Statute, contained in Section 17.042 of the Texas Civil Practice and Remedies Code, by recruiting Texas residents for employment inside the State of Texas through its Dallas Terminal, located at 2600 East Pioneer Drive, Irving, Texas 75061, where Mr. Wilson was employed during the time period relevant to this suit. Further, an exercise of jurisdiction will not offend traditional notions of fair play and substantial justice.

4. Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331 because this case asserts claims for violation of Title VII of the Civil Rights Act of 1964 and 28 U.S.C. § 1981, federal laws that provides for federal question jurisdiction.

5. Subject matter jurisdiction is also proper pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.

6. Venue is appropriate in the Northern District of Texas because the acts giving rise to this suit occurred in Dallas County, Texas.

## IV.
## FACTS

7. Mr. Wilson first began for UPS in 2001.

8. Mr. Wilson is an African American male.

9. Mr. Wilson worked as a road driver for UPS.

10. For the duration of his employment, Mr. Wilson was a strong performer who had no relevant disciplinary history.

11. Mr. Wilson always gave his best efforts to Defendant and anticipated finishing his career with Defendant.

12. Unfortunately, Mr. Wilson was not treated the same as other, similarly situated, non-African American employees.

13. Defendant's attempts to terminate Mr. Wilson began in October 2014, when Mr. Wilson was unjustifiably terminated on or around October 2, 2014 after he advised UPS' dispatcher, Michael Bush, that he would need to leave before the end of his shift due to illness.

14. Ultimately, Mr. Wilson was rehired and returned to work for UPS less than one month later, on or around October 27, 2014, and UPS even provided Mr. Wilson with back pay for the time period during which he was out of work.

15. Ultimately, Mr. Wilson filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") in or around November 2014 as a result of this first wrongful termination, raising concerns of race discrimination.

16. After Mr. Wilson's return to UPS and subsequent filing of an EEOC Charge, Mr. Wilson began to experience harassment and continued attempts to terminate his employment on the part of UPS.

17. By way of example, Mr. Wilson was prevented from driving longer routes, as those routes were taken from Mr. Wilson and given to Anglo employees.

18. Specifically, on one occasion, Mr. Wilson was scheduled to drive a route to San Antonio, which was the longest route made available to him that day.

19. Without explanation, the route was taken from Mr. Wilson and was instead given to an Anglo employee.

20. Mr. Wilson was then required to drive a shorter route, which negatively affected his pay, since drivers are paid based in large part on the length of the routes they are assigned to drive.

21. Further, Mr. Wilson was subjected to constant and excessive scrutiny by his supervisors.

22. In one instance, Mr. Wilson's supervisor, Wayne Alexander, told Mr. Wilson that a delay prior to dispatch to repair safety issues with his truck found during his pre-trip inspection was unacceptable.

23. The safety issues found by Mr. Wilson in his pre-trip inspection included non-working lights on his trailer.

24. Mr. Wilson also received a warning on at least one occasion for failing to adequately "post-trip" his truck after completing a route because one of the truck's headlights was allegedly out.

25. Upon information and belief, other, non-African American employees were not reprimanded for these kinds of incidents.

26. UPS ultimately terminated Mr. Wilson after UPS falsely accused him of stealing time on or around January 23, 2015.

27. On or around January 23, 2015, Mr. Wilson was driving a route to Shreveport, Louisiana, when he noticed that his truck was losing power.

28. Mr. Wilson was able to safely arrive in Shreveport but knew that his truck would require repairs in order for Mr. Wilson to drive back to the Dallas Terminal.

29. In the meantime, Mr. Wilson began to do what he and other UPS road drivers typically did while waiting for repairs to be completed and waited in the terminal.

30. While Mr. Wilson was waiting, the Shreveport terminal manager asked Mr. Wilson if he had been offered to work the dock while waiting for repairs to be performed.

31. Mr. Wilson explained that he did not know he was expected to work the dock while waiting for repairs on his truck or trailer.

32. The Shreveport terminal manager spoke with a union steward, who advised the terminal manager that it was not in Mr. Wilson's job description to work the dock while waiting for repairs.

33. After maintenance staff arrived later that morning and performed the needed repairs to Mr. Wilson's truck, Mr. Wilson left Shreveport promptly to return to Dallas.

34. When Mr. Wilson arrived in Dallas, Mr. Wilson learned that the Dallas terminal manager, Eric Bridges, wanted to see Mr. Wilson in his office.

35. Mr. Wilson went to speak with Mr. Bridges, and Mr. Bridges accused Mr. Wilson of "stealing time" from UPS.

36. Mr. Bridges questioned Mr. Wilson about the repairs made to his truck at the Shreveport terminal.

37. Mr. Bridges also claimed that Mr. Wilson's contract with UPS required him to work the dock while waiting for repairs.

38. Mr. Bridges then advised Mr. Wilson that UPS was terminating Mr. Wilson for "theft of time."

39. The reason provided for Mr. Wilson's termination is false and a pretext for discrimination and retaliation.

40. Mr. Wilson was shocked by the reason provided for his termination, because similarly situated employees who are not African American or did not lodge complaints of race discrimination were not required to work the dock while waiting for truck repairs and were not punished, let alone terminated, for failing to work the dock while waiting for truck repairs.

41. Mr. Wilson can further cast doubt on Defendant's stated reason for his termination based on his job performance.

42. On or about April 20, 2015, Mr. Wilson filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"), which was co-filed with the Texas Workforce Commission ("TWC"); Mr. Wilson's charge was docketed by the EEOC on or about April 24, 2015.

43. Mr. Wilson was issued a notice of right to sue by the EEOC on or about August 18, 2015. This lawsuit has been filed within 90 days of Mr. Wilson's receipt of this notice of right to sue.

44. Defendant is an "employer" as defined by Title VII.

45. Mr. Wilson was an "employee" as defined by Title VII.

46. Mr. Wilson has satisfied all jurisdictional prerequisites in connection with his claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*.

47. All conditions precedent to the bringing of this suit have occurred or have been performed.

## V.
## COUNT ONE: RACE DISCRIMINATION IN VIOLATION OF
## 42 U.S.C. § 2000e *et seq.*, TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

48. Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

49. Defendant violated Title VII of the Civil Rights Act of 1964 when it terminated Mr. Wilson because of his race.

50. Plaintiff has satisfied all jurisdictional prerequisites in connection with his claims under Title VII.

51. Defendant is engaged in an industry affecting commerce and had 15 or more employees during the relevant time period.

52. Mr. Wilson is African American.

53. Mr. Wilson was qualified for the position of road driver.

54. Mr. Wilson suffered an adverse employment action when he was terminated by Defendant from his position as road driver because of his race.

55. In terminating Mr. Wilson, Defendant treated Mr. Wilson differently than other, similar situated, non-African American employees.

56. Because of the actions of Defendant, Mr. Wilson has suffered damage within the jurisdictional limits of this Court.

## VII.
## COUNT TWO: RACE DISCRIMINATION
## IN VIOLATION OF 42 U.S.C. § 1981

57. Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

58. Defendant violated 42 U.S.C. § 1981 when it terminated Mr. Wilson because of his race.

59. Mr. Wilson is African American.

60. Mr. Wilson was qualified for the position of road driver.

61. Mr. Wilson suffered an adverse employment action when he was terminated by Defendant from his position as road driver because of his race.

62. In terminating Mr. Wilson, Defendant treated Mr. Wilson differently than other, similar situated, non-African American employees.

63. Because of the actions of Defendant, Mr. Wilson has suffered damage within the jurisdictional limits of this Court.

## VI.
## RETALIATION IN VIOLATION OF 42 U.S.C. § 2000e *et seq.*, TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

64. Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

65. Defendant violated Title VII of the Civil Rights Act of 1964 when it terminated Mr. Wilson because of his opposition of race discrimination.

66. Plaintiff has satisfied all jurisdictional prerequisites in connection with his claims under the Title VII.

67. Mr. Wilson engaged in activity that is protected under federal law, specifically opposing race discrimination by, among other acts, filing a charge of discrimination with the EEOC.

68. Defendant subjected Mr. Wilson to adverse employment actions, including terminating his employment with Defendant.

69. Defendant subjected Mr. Wilson to adverse employment actions, including his termination, because of his participation in activity that is protected under federal law.

70. Defendant acted at all relevant times with malice and/or reckless indifference to Plaintiff's protected rights.

71. Because of the actions of the Defendant, Mr. Wilson has suffered damage within the jurisdictional limits of this Court.

## VI.
## RETALIATION IN VIOLATION OF 42 U.S.C. § 1981

72. Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

73. Defendant violated 28 U.S.C. § 1981 when it terminated Mr. Wilson because of his opposition of race discrimination.

74. Mr. Wilson engaged in activity that is protected under federal law, specifically opposing race discrimination by, among other acts, filing a charge of discrimination with the EEOC.

75. Defendant subjected Mr. Wilson to adverse employment actions, including terminating his employment with Defendant.

76. Defendant subjected Mr. Wilson to adverse employment actions, including his termination, because of his participation in activity that is protected under federal law.

77. Defendant acted at all relevant times with malice and/or reckless indifference to Plaintiff's protected rights.

78. Because of the actions of the Defendant, Mr. Wilson has suffered damage within the jurisdictional limits of this Court.

## VII.
## JURY DEMAND

79. Plaintiff demands a trial by jury and has tendered the appropriate fee.

## IX.
## PRAYER

80. WHEREFORE, Plaintiff Laroderick Wilson requests that Defendant UPS Ground Freight, Inc. be summoned to appear and answer, and that, after trial by jury, Plaintiff take judgment against Defendant as follows:

   a. Judgment against Defendant for actual damages, including lost wages and benefits (both back pay and front pay), the sum to be determined at time of trial.

   b. Judgment against Defendant for compensatory damages.

   c. Judgment against Defendant for punitive damages to the extent Defendant acted with malice or reckless indifference.

   d. Judgment for injunctive relief compelling Defendant to take or refrain from further action as may be necessary to redress Defendant's violations of Title VII and Section 1981.

   e. Judgment against Defendant for pre-judgment and post-judgment interest at the maximum rate allowed by law.

   f. Judgment against Defendant for costs of suit, including attorney fees.

   g. Judgment for such other and further relief, whether at law or in equity, to which Plaintiff may justly be entitled.

Respectfully submitted,

*/s/ Allison C. Reppond*
Robert J. Wiley
Texas Bar No. 24013750
*Board Certified – Labor and Employment Law – Texas Board of Legal Specialization*
Allison C. Reppond
Texas Bar No. 24085733
LAW OFFICE OF ROB WILEY, P.C.
1825 Market Center Blvd., Suite 385
Dallas, Texas 75207
Telephone:  (214) 528-6500
Facsimile:  (214) 528-6511
areppond@robwiley.com

ATTORNEYS FOR PLAINTIFF
LARODERICK WILSON

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been served on the following counsel for Defendant UPS Ground Freight, Inc. via First Class Mail, postage prepaid, on the 20th day of November, 2015.

Shannon B. Schmoyer
Brooke S. Waldrep
Schmoyer Reinhard LLP
17806 IH 10 West, Suite 400
San Antonio, Texas 78257

*/s/ Allison C. Reppond*
Allison C. Reppond